**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DERRICK M. STANBERRY, #209119** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION NO. 11-00124-CG-B** |
| | : | |
| **RICHARD ALLEN, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

Derrick Stanberry, an Alabama prison inmate proceeding <u>pro se</u> and <u>in forma pauperis</u>, filed a Complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants Richard Allen, Tony Patterson, James Powers, William DeSpain, Allen Lang[1], Willie Copeland, Michael Everett, and Richard Armstrong's Motion for Summary Judgment and supporting materials (Docs. 22, 23), and Plaintiff's response and materials in opposition thereto. (Docs. 24, 25, 27, 28). Upon consideration, it is recommended that Defendants' Motion for Summary Judgment be granted and that the Plaintiff's action

---

[1]   In the Complaint, and other filings by Stanberry, he incorrectly references Defendant Lang as "Doc Lane Hobbycraft".

should be dismissed with prejudice for the reasons set forth below.

## I.   **BACKGROUND**

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation. According to Stanberry, while housed at the Holman Correctional facility on September 4, 2010, he was attacked by Terry Harris, a fellow inmate, at 10:30 a.m., while sitting on a milk crate with his hands in his pockets at his assigned bed A-28. (Doc. 1 at 4-6). Stanberry asserts that Officer Richard Armstrong came to the scene, and yelled for them to break it up, but he made no effort to physically intervene. Stanberry further asserts that although he advised Officer Armstrong that inmate Harris had a knife, Officer Armstrong still did not intervene. Instead, he went into the "cube" to radio for help, but his radio was dead. Stanberry states that Armstrong made no effort to return to the cell, but stood and observed the attack from a distance. Stanberry further asserts that he grabbed a broom in an attempt to protect himself, but inmate Harris knocked him to the ground, straddled him, and cut him in the chest with a "hobby craft box cutter". According to Stanberry, when Officer Everett and other officers arrived on the scene, they improperly sprayed him with mace. (Id.).

The prison records reflect that Stanberry and Harris were separated, and less than thirty minutes after the assault began, Stanberry was immediately escorted to the Health Care Unit by Sgt. Everette and Officer Broadhead. (Doc. 23-1 at 5). The medical staff examined Stanberry and noted that he had multiple stab wounds and was bleeding from his left ear, right hand, left scalp, back, chest, face, and upper arm. Stanberry's eyes were irrigated, his wounds were cleaned, and pressure dressings were applied. (Id.). Stanberry was then transported to the Emergency Room at Atmore Community Hospital for sutures. (Id.). The record does not indicate and Stanberry does not allege that he developed any complications as a result of his injuries.

In his Complaint, Stanberry alleges that that Defendants were deliberately indifferent to his rights, and failed to protect him from inmate Harris, who in April through July 2010, advised Defendant William DeSpain, who was the classification officer at the time, and Defendant James Powers, who was the classification supervisor at the time, that he was experiencing a serious mental health problem that was causing him to assault other inmates in general population. (Doc. 1 at 4-6). Stanberry asserts that inmate Harris also advised them that he needed mental health treatment, and that he would assault another inmate without such treatment. Stanberry contends that Harris' concerns were ignored by Defendants DeSpain and Powers, and that

Plaintiff was assaulted as a result. Stanberry further alleges that although Defendant Armstrong witnessed the assault, he took no action to intervene and protect Plaintiff from inmate Harris. Stanberry also alleges that Defendant Armstrong negligently failed to maintain a properly functioning radio. (Id. at 5).

Additionally, Stanberry alleges that Defendants Captain Willie Copeland and "Hobbycraft" director Lane failed to take reasonable security measures to account for, and to prevent the widespread flow of box cutter blades by inmates at the facility. Plaintiff also alleges that Richard Allen, who was the Commissioner of the Alabama Department of Corrections when the attack occurred, and Tony Patterson, who is the warden at the facility are liable because they failed to provide sufficient security at the facility, and further failed to take reasonable security measures to account for, and to prevent the widespread flow of box cutter blades by inmates at the facility. (Id. at 8). In support of his allegations, Stanberry has submitted his sworn statement, and the sworn statement of inmate Harris. (Docs. 25 at 11-14; 1 at 12).

In their Answer and Special Report filed on December 5, 2011 (Docs. 22, 23), Defendants deny that they were deliberately indifferent to Plaintiff's rights, argue that Plaintiff cannot sustain a claim under the Eighth Amendment, and assert the affirmative defenses of qualified immunity, absolute immunity,

sovereign immunity, discretionary function immunity and Eleventh Amendment immunity. (Docs. 22, 23). In support of Defendants' Answer and Special Report, they submitted the affidavits of Defendants Officer Richard Armstrong, Captain James Powers, William Despain, Officer Allen Lang, Warden Tony Patterson, and Corporal Michael Everette. (Docs. 23-2, 23-3, 23-4, 23-5, 23-6, 23-7). On December 23, 2011, Stanberry filed a Motion to Amend (Doc. 24), which was granted by this Court on January 6, 2011. (Doc. 26). In Stanberry's motion, he clarifies that he is suing Defendants in their individual capacities only. (Doc. 24). On January 6, 2012, Defendants' Answer and Special Report were converted into a motion for summary judgment, and the parties were provided an opportunity to file any responses in support or opposition. Stanberry filed one response to Defendants' Answer and Special Report prior to the issuance of the Court's January 6, 2012, Order, and two responses thereafter. (Docs. 25, 27, 28).[2]   Those pleadings and Defendants' Motion are now before the Court.

## II.  **SUMMARY JUDGMENT STANDARD**

---

[2]   In the document that was signed on January 14, 2012 (Doc. 28), Stanberry requested leave to conduct depositions and to submit interrogatories and requests for admissions. Said request is **denied** as Stanberry fails to detail the specific information he was seeking or the reasons why such information was being requested.

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact….'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989). However, the Court is only to "make all *reasonable* inferences in favor of the party opposing summary judgment … not to make all *possible* inferences in the nonmoving party's favor." Torjagbo v. United States, 285 Fed. Appx. 615, 619 (11th Cir. 2008) (emphasis in original).

Rule 56(e)(2) states that:

> [w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond,

> summary judgment should, if
> appropriate, be entered against that
> party.

Fed. R. Civ. P. 56(e).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

In a civil action filed by an inmate, although drawing "all justifiable inferences in [the inmate's] favor," federal courts

> must distinguish between evidence of
> disputed facts and disputed matters of
> professional judgment. In respect to
> the latter, our inferences must accord
> deference to the views of prison
> authorities. Unless a prisoner can
> point to sufficient evidence regarding
> such issues of judgment to allow him to
> prevail on the merits, he cannot
> prevail at the summary judgment stage.

<u>Beard v. Banks</u>, 548 U.S. 521, 529-30 (2006) (internal citation omitted).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is "no genuine issue for trial."'" <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

### III. <u>ANALYSIS</u>

As discussed above, Stanberry seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of a physical attack by another inmate. (Docs. 1, 25). Specifically, he alleges that Defendants violated his Eighth Amendment rights by failing to protect him from the physical attack by inmate Harris, and failed to adequately monitor and control the flow of box-cutters into the facility. Defendants deny that they violated Stanberry's constitutional rights, and assert the defenses of absolute, qualified, and Eleventh Amendment immunity.

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at

> law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994).

In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its Power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - - *e.g.,* food, clothing, shelter, medical care, and reasonable safety - - it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

In order to prevail on his Eighth Amendment claim, Stanberry must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, Williams v. Bennett, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).

In Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." LaMarca, 995 F.2d at 1535. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The objective standard "embodies broad and

10

idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." Sims, 25 F.3d at 983-84 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. Id. (citations omitted). In defining "deliberate indifference," the Supreme Court in Farmer stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. The court concluded that the "subjective recklessness" standard of criminal law is the test

11

for "deliberate indifference" under the Eighth Amendment.  Id.
at 839-40. Accordingly, "a claim based on deliberate
indifference contains three components: "(1) subjective
knowledge of a risk of serious harm; (2) disregard of that risk;
3) by conduct that is more than negligence." McElligott v.
Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). There is no
liability for "an official's failure to alleviate a significant
risk that he should have perceived but did not...." Farmer, 511
U.S. at 838. Further, a defendant may avoid liability by showing
that he "did not know the underlying facts indicating a
substantial danger, or that he knew the underlying facts but
believed (albeit unsoundly) that the risk to which the facts
gave rise was insubstantial or nonexistent." Id. at 844.

A prison official's duty under the Eighth Amendment is to
ensure "reasonable safety," a standard that incorporates due
regard for prison officials' "unenviable task of keeping
dangerous men in safe custody under humane conditions." Id. at
844-45 (citations omitted). "Whether one puts it in terms of
duty or deliberate indifference, prison officials who act
reasonably cannot be found liable under the Cruel and Unusual
Punishments Clause." Id.

Having set forth the general legal principles relevant to
Plaintiff's claims, the Court now turns to the application of
those legal principles to the facts before the Court. As a

threshold matter, the undersigned finds that Stanberry's claim that the prison was not properly staffed fails because he has wholly failed to offer any evidence in support of this assertion. Likewise, Plaintiff's assertion that Defendants were deliberately indifferent in failing to provide prison officials at the Holman facility with radios that functioned properly also fails. The unrefuted evidence establishes that prison officials at the facility are in fact provided radios and batteries for their radios, and that on the day Stanberry was assaulted, Defendant Armstrong was armed with a radio, but when he attempted to utilize it, he discovered that the batteries were dead. (Doc. 23-1 at 3-4). Such facts do not rise to the level of a constitutional violation, but instead reflect negligence at best.

As discussed above, in order to establish the objective element of an Eighth Amendment claim in a failure to protect case, an inmate must establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." Farmer, 511 U.S. at 834. It is settled that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm...." Purcell, 400 F.3d at 1320 ("confinement in a prison where violence and terror reign is actionable."). On the other hand, "occasional, isolated attacks

by one prisoner on another may not constitute cruel and unusual punishment." Id.

Plaintiff has not established the objective element of his Eighth Amendment claim because he has not established that he was incarcerated under conditions which exposed him to a substantial risk of serious harm. The evidence reflects that prison officials at Holman have procedures in place designed to prevent the flow of unlawful materials into the facility. Inmates assigned to the hobby craft shop are allowed to purchase materials to work on leather goods; however, cutting devices, such as box cutters, are not allowed in dormitory settings or cells. (Docs. 23-5; 23-6). Inmates are searched when they exit the hobby craft shop, and the correctional staff also conducts routine searches of cells, dormitories and inmate personal property to help control and eliminate the flow of contrabands (i.e. items that are not permitted in the facility, or items, such as box cutters, which have been improperly altered from their intended use) (Id.). The record reveals that at the time of inmate Harris' attack on Plaintiff, neither inmate was assigned to the hobby center, where cutting devices are used to work on leather goods. (Id.).

Additionally, while Stanberry alleges that inmate violence involving box cutters was widespread in the facility, he points to a single violent "box cutter" incident which is alleged to

14

have occurred in July 2011, some two months before Harris assaulted him. There is no assertion that inmate Harris was in any way connected to the July 2011 incident. These facts, viewed in the light most favorable to Stanberry, fail to establish widespread prison violence let alone that Stanberry was incarcerated under conditions which exposed him to a substantial risk of serious harm.

Stanberry has also asserted that inmate Harris should not have been placed with the general population because he had experienced violent encounters with other inmates, and that he had placed prison officials on notice of his mental health issues and propensity for violence. A review of the record however reflects that mental health evaluations of inmate Harris in 2009 and May of 2010 did not uncover any serious mental disorders and his two letters to prison officials faulted his run-ins with other inmates on the "uncivilized" general prison population. (Doc. 23-3 at 4-5). The record reflects that inmate Harris, in two letters to prison officials, sought to remain in segregation until such time as he could be transferred to another facility. Harris indicated that he should not be forced to live in a general prison population which was filed with "uncivilized inmates" who were engaged in negative and illegal activities. (Id.). Given that the clear motivation for Harris' letters was his desire to be transferred to a lower level

facility, and that mental health evaluations disclosed no serious mental health issues, Stanberry has not established that Defendants' decision to place Harris in the general population exposed Plaintiff to a substantial risk of serious harm. (Doc. 23-3).

Further, Stanberry's contention that Defendant Armstrong failed to intervene in Harris' attack on him fails to establish that Armstrong exposed Stanberry to a substantial risk of serious harm.   The evidence is undisputed that Armstrong gave several commands for the inmates to separate, and he attempted unsuccessfully to radio for assistance. (Doc. 23-1 at 3, 26). Although the radio did not function, Armstrong was nevertheless able to summon assistance to the scene. In his affidavit, Officer Armstrong confirms that, when he saw the fight, he attempted to call for assistance via the radio but was unable to do so because the radio battery was dead.  (Doc. 23-2 at 1). Officer Armstrong further states that he retrieved a canister of mace and administered a one second burst to the facial area of both inmates to stop the fight.  (Id.).  When the chemical agent took effect, Officer Armstrong was able to separate the inmates. (Id.).   In less than thirty minutes from the start of the assault, Stanberry was in the medical unit receiving treatment. Officer Armstrong's attempts to summon help and his use of a chemical agent to stop the fight belie Stanberry's assertion

16

that he failed to intervene.  Moreover, the undersigned finds that, even accepting as true Stanberry's allegations that Officer Armstrong went into the "cube" to radio for help and observed the attack from a distance, those allegations fail to establish that Armstrong subjected Stanberry to unnecessary pain and suffering given that both inmates were armed with weapons, Harris with a knife and Stanberry with a broken mop, and Armstrong deemed it necessary to solicit assistance to defuse the situation.

The law is clear that "[A] prison custodian is not the guarantor of a prisoner's safety."  Purcell, 400 F.3d at 1321 (citation omitted). "[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. As discussed above, a prison official's duty under the Eighth amendment is to ensure "reasonable safety." Id. at 844. Based on the evidence presented, the undersigned finds that Stanberry has not established that he was exposed to the "constant threat of violence" or and that he was subjected to a substantial risk of harm; thus, he has failed to satisfy the objective element of his Eighth Amendment claim.

Assuming arguendo that Stanberry's evidence did satisfy the objective element prong of the Eighth Amendment, he must also

demonstrate that Defendants were deliberately indifferent to the risk of serious harm to him. To meet the requirements of this element, Stanberry must prove that Defendants actually knew that a substantial risk of serious harm existed, and that they "knowingly or recklessly" declined to take action to prevent that harm. LaMarca, 995 F.2d at 1537. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838.

Whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence. Id. at 842. "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Hale, 50 F.3d at 1583 (quoting Farmer, 511 U.S. at 842). However, Eighth Amendment liability may be avoided by showing: "(1) that they did not know of the underlying facts indicating a sufficiently substantial danger; (2) that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent; or (3) that they responded reasonably to the risk, even if the harm ultimately was not averted." Rodriguez v. Sec'y Dept. of Corr., 508 F.3d 611, 617-18 (11th Cir. 2007)(citing Farmer, 511 U.S. at 844).

As noted supra, Stanberry claims that Holman officials were in fact aware of the risk posed by Harris, and he relies on Harris' sworn statement in which Harris asserts that he wrote two letters to Defendants DeSpain and Powers informing them of his "serious mental health problem that [causes him] to assault other inmates in general population." (Doc. 1-1). Defendants contend that based on the records available at the time, no one knew or could have predicted that Harris would harm Stanberry. Specifically, as noted supra, Harris' institutional file contained the two aforementioned letters (dated November 26, 2009 and May 5, 2010) but did not contain the details recited by Harris. Rather these letters requested a transfer from Holman because Harris felt uncomfortable around the negative uncivilized inmates.[3] (Docs. 23-3, 23-4). Furthermore, Harris' Mental Health Services reports in May 2009, and May 2010 coded him as "0" with no significant mental health issues. (Id.). In addition, neither Harris nor Stanberry had listed each other as enemies, and there was no record of any problems between the two. Thus, it is clear that Defendants did not know and had no

---

[3]   See Richardson v. Johnson, 598 F.3d 734 (11th Cir. 2010) (Claims against the Warden for failure to protect the prisoner against the assault were rejected because the prisoner's prior grievance requesting to be transferred because his cellmate was "unhygienic" did not show that the warden was aware of, but disregarded, a serious risk of assault).

reason to know that Harris posed a substantial risk of harm to Stanberry or any other inmate.

In addition, the fact that there was a single violent incident involving a box cutter in July 2010 was not sufficient to place Defendants on notice that Stanberry or some other inmate would likely be attacked with a box cutter in September 2010. This is particularly true given the undisputed evidence that cutting instruments are not allowed in the dormitory areas, and that prison officials take steps, including searching inmates before exiting the hobby area, and conducting random searches of prison cells, dormitories and inmate property, in order to eliminate, to the extent possible, the possession of contraband in the facility.

Finally, Plaintiff's contention that Defendant Armstrong failed to physically intervene to stop Harris' assault of him does not rise to the level of deliberate indifference. As noted supra, notwithstanding the problem with his radio, Defendant Armstrong acted promptly in summoning assistance, and with the use of mace, separated Harris and Stanberry[4]. There is no evidence that Armstrong had any reason to anticipate any

---

[4]  In his written statement during the disciplinary proceedings, Stanberry acknowledged that Armstrong instructed him and Harris to separate, and then called for assistance on the radio. When Armstrong realized the radio was not functioning, he ran to the "cube" to request assistance. (Docs. 23-1 at 26).

conflict between Stanberry and Harris, or that his radio would not function properly when he initially attempted to radio for assistance.  Viewing these facts in the light most favorable to Stanberry, they establish, at best, negligence or simple misjudgment on the part of Defendant Armstrong. Negligence, however, does not justify liability under § 1983.  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). Accordingly, Defendants are entitled to judgment as a matter of law on Stanberry's Eighth Amendment failure to protect claim.

## IV.   CONCLUSION

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Stanberry. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED**, that this action be **DISMISSED** with prejudice, and that judgment be entered in favor of Defendants and against Stanberry on all claims.

The attached sheet contains important information regarding objections to this recommendation.

DONE this **31st**  day of **August, 2012.**

                    **/s/ SONJA F. BIVINS_____**
                    **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.   Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the

---

[5]   Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).

objection may be deemed an abandonment of
the objection.

A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment
can be appealed.

2.   **Opposing party's response to the objection.**   Any opposing
party may submit a brief opposing the objection within fourteen
(14) days of being served with a copy of the statement of
objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the
magistrate judge finds that the tapes and original records in
this action are adequate for purposes of review.  Any party
planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.